**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

REGINAL E. OATES,            :

      Plaintiff,            :

vs.                    :      CA 08-0478-CG-C

MICHAEL J. ASTRUE,     :
Commissioner of Social Security,
                      :
      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the parties' arguments at the March 11, 2009 hearing before the Magistrate Judge, it is determined that the decision to deny benefits should be affirmed.

The Administrative Law Judge (ALJ) made the following relevant

findings:

> **3.     The claimant has had the following "severe" impairments: psychotic disorder versus malingering; alcohol and cocaine dependence; antisocial personality disorder; and probable L5-S1 disc narrowing (20 CFR 404.1520(c) and 416.920(c)).**

.     .     .

> **5.     The claimant has not had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

.     .     .

> The undersigned finds that, during the period of adjudication, the claimant had a "mild" limitation of activities of daily living; no more than "mild" limitations in social functioning; no more than "moderate" deficiencies in concentration, persistence or pace in work settings or elsewhere; and "no" episodes of decompensation. The evidence has not established the presence of the "C" criteria. These conclusions are supported by the record evidence as a whole.

> **6.     After careful consideration of the entire record, the undersigned finds that the claimant has retained the residual functional capacity for light exertion, in function-by-function physical terms (SSRs 83-10 and 96-8p), without significant nonexertional restrictions associated therewith. The claimant has retained the mental residual functional capacity for at least simple and repetitive unskilled work tasks (SSR 85-15). This total work capacity has not been prohibited or significantly altered by continuous 12-month periods of impairment exacerbation during the period of adjudication.**

.     .     .

**8.     The claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.     .     .

**9.     The claimant was born on November 29, 1957 and was 46 years old, which is defined as a "younger individual age 18-49," on December 6, 2003, the day after the prior final unfavorable determination. It is noted that, when the claimant attains age 50 on November 29, 2007, he will be considered an individual "closely approaching advanced age" (20 CFR 404.1563 and 416.963).**

**10.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). As noted above, the claimant's past work was "unskilled" to "semi-skilled" in nature.**

**11.     Considering the claimant's age, education, work experience, and physical/mental residual functional capacity, there are jobs that have existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). An issue of transferable skills would be immaterial to the outcome of this case.**

.     .     .

**12.     The claimant has <u>not</u> been under a disability, as defined in the Social Security Act, from December 6, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 20, 24, 25, 30 & 31 (emphasis in original))  The Appeals Council affirmed

3

the ALJ's decision (Tr. 5-7) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that, within the framework of the grids, he can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a

4

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

It is contended that the ALJ made the following errors: (1) he erred in failing to discuss or assign weight to the opinions of treating psychiatrist Dr. Magdy Ragheb regarding plaintiff's mental limitations in light of the doctor's opinions regarding plaintiff's Global Assessment of Functioning (GAF) scores; (2) he erred in failing to assign any weight to the opinion of Theresa Rozum, a Licensed Clinical Social Worker who sees plaintiff at the Mobile Alabama Veterans Affairs Medical Center, that plaintiff has been permanently unable to mentally or physically work since March 2007 due to psychotic disorder, hyperthyroidism, diabetes, thyroiditis, and antisocial personality disorder; (3) he erred in failing to perform a "function-by-function" analysis of plaintiff's physical limitations; and (4) he committed reversible error by finding plaintiff can perform work when the ALJ failed to pose any hypothetical questions to the vocational expert that included "mild" limitations

of activities of daily living, no more than "mild" limitations in social functioning, and no more than "moderate" deficiencies in concentration, persistence or pace in work settings or elsewhere. (Doc. 11, at 2-3) The Magistrate Judge considers these issues in reverse order.

A. **Hypothetical Questions.** Plaintiff contends that the ALJ erred in finding plaintiff can perform work because he did not pose hypothetical questions to the VE that included "mild" limitations of activities of daily living, no more than "mild" limitations in social functioning, and no more than "moderate" deficiencies in concentration, persistence or pace in work settings or elsewhere. It is clear in this circuit that if a hypothetical question posed to a VE does not comprehensively describe all of the claimant's impairments and limitations, the expert's testimony in response to that question does not constitute substantial evidence that other jobs exist in significant numbers in the national economy that the claimant can perform. *See Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) ("'[U]nless there was vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence.'").

6

The ALJ relied upon the following testimony of the vocational expert, in response to several hypothetical questions, to establish his fifth-step burden of proving that plaintiff is capable of performing other work which exists in significant numbers in the national economy:

Q    Let's further assume in question number two the individual has mental limitations such that the individual should perform only simple and repetitive unskilled work tasks. Would this restriction eliminate any category of Mr. Oates['] past relevant work?

A    Yes, sir, it would eliminate his past work as a lift truck driver. But the day laborer and the janitor jobs would continue to be appropriate.

.    .    .

Q    Now question number four today, I ask that we assume the mental limitations given in question number two. And in question number four let's assume the individual is not only precluded from work but medium work or exertion, but still could perform light and sedentary exertion. Would these restrictions preclude the performance of Mr. Oates['] past relevant work?

A    Yes, sir, it would.

Q    Would you be able to identify other occupations known to exist in the regional and national economies that such a person could perform given the combined mental and physical restrictions?

A    Yes, sir. We'd be looking at, first of all, light entry level unskilled work which would be considered simple and repetitive. An individual so described could do light unskilled

7

work as a bench assembler, 7600 in the state, 825,000 in the national economy. That same individual could also do light unskilled work as a housekeeper or light duty janitor, light duty janitorial work, 15,000 in the state, 1.1 million in the national economy. Finally, could do light unskilled work as a mail clerk in non postal capacity, 2300 in the state and 350,000 in the national economy. That would be a representative sample of light. At the sedentary level we'd be looking at sedentary bench assembly, 2500 in the state, 260,000 in the national economy. As far as simple repetitive we'd also be looking at surveillance system monitor, 1250 statewide and 365,000 in the national economy. And then finally an order clerk, 2400 in the state, 285,000 in the national economy. And that would be a representative sample of sedentary. And all my answers are in line with the DOT.

(Tr. 682-683 & 683-684)

The undersigned cannot agree with plaintiff that the ALJ's hypotheticals posed to the VE were non-comprehensive due to their failure to include "mild" limitations of activities of daily living, no more than "mild" limitations in social functioning, and no more than "moderate" deficiencies in concentration, persistence or pace in work settings or elsewhere. This is because such limitations were sufficiently encompassed by the ALJ's charge to the VE to assume that the hypothetical individual "has mental limitations such that the individual should perform only simple and repetitive unskilled work tasks." *Compare* Tr. 682 *with Chartier ex rel. Chartier v. Astrue*, 2008 WL 795873, *4 (E.D. Mich. 2008) ("The ALJ found that Chartier's severe

mental impairments result in moderate difficulty in maintaining concentration, persistence, or pace, mild restriction of activities of daily living and social functioning, and no episodes of decompensation. 'Regarding psychological limitations, such as concentration limitations, the Sixth Circuit has held that the specific psychological limitation need not be specifically mentioned in the hypothetical question if that question accurately describes the claimant's limitations arising from a mental impairment or otherwise accommodates the limitation.' . . . In this case, the ALJ's hypothetical limited Chartier to employment consisting of 'simple and repetitive job tasks'; this limitation accurately portrayed Chartier's employment-related limitations stemming from the severe impairments of depression and alcohol addiction.").[1]   In other words, although the words mild limitation in activities of daily living and social functioning, and moderate limitations in concentration, persistence and pace, were not used by the ALJ, it is clear that the ALJ was not unaware of those limitations given that he assumed in the hypotheticals posed to the VE that plaintiff could perform only simple and repetitive unskilled work tasks. *Cf. Jones v. Commissioner of Social Security*, 2008 WL 4642860, *7 (E.D. Mich. 2008) ("[A]lthough the words 'moderate limitations in concentration,

---

[1]       "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

persistence and pace' were not expressly mentioned, the ALJ was not oblivious to those limitations in crafting the very detailed hypothetical that assumed Plaintiff could do only simple, routine, low stress work and work where he would experience superficial contact but did not require working in tandem with someone else nor to be in contact with the general public."). Accordingly, the undersigned finds the hypothetical questions posed to the VE by the ALJ supported by substantial evidence. Moreover, combining the manner in which the questions were posed with the fact that all jobs identified by the VE fall within the light (or sedentary), unskilled category carries the Commissioner's fifth-step burden given that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting[,]" SSR 85-15, and that mild and moderate restrictions of function would not compromise Oates' ability to perform the mental requirements of those unskilled light jobs identified by the VE, *cf. Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 527 (1st Cir. 1989) ("Drs. Quinones and Iglesia, in findings that correspond in part to those of Dr. Keene, each reported that claimant was 'moderately limited' in his

ability: (1) to maintain attention and concentration for extended periods; (2) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) to complete a normal workday without unreasonable interruptions. The claimant's diminished ability to maintain attention and concentration also was reported by (among others) Dr. Miguez, the Secretary's consulting psychiatrist, and was mentioned by the ALJ, who otherwise did not address these manifestations of claimant's dysthymia. In light of these 'moderate' restrictions, we think that claimant's potential occupational base was eroded at least marginally, and possibly more so. At the same time, we agree with the ALJ's conclusion that, apart from his being relegated to jobs of an unskilled nature, 'the claimant's capacity for the full range of light work was not *significantly* compromised by his additional nonexertional limitations.'").

**B.    No "Function-by-Function" Analysis**.  Plaintiff next contends that the ALJ erred in failing to perform a function-by-function analysis of his exertional limitations. (Doc. 11, at 8-10) More specifically, plaintiff contends that the ALJ "failed to provide any finding with regard to the Plaintiff's ability to sit, stand, walk, push, pull, or perform any other physical, postural, manipulative functions or to consider environmental factors." (*Id*. at 10)

In his decision, the ALJ cited to the very social security ruling plaintiff cites to respecting function-by-function analysis, that is, SSR 96-8p. (*Compare* Tr. 25 (**"After careful consideration of the entire record, the undersigned finds that the claimant has retained the residual functional capacity for light exertion, in function-by-function physical terms (SSRs 83-10 and 96-8p)[.]"**) *with* Doc. 11, at 9 ("Social Security [R]uling 96-8p requires that '[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'")) Paragraph (b) of 20 C.F.R. 404.1545 and 416.945 provides as follows: "A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work." *Id.*

While it is true that the ALJ in this case did not specifically indicate Oates' ability to perform the foregoing physical demands of work activity, that

is, exactly how long plaintiff can sit, stand and walk in an 8-hour workday, etc., any such error in this regard is harmless inasmuch as the evidence of record clearly supports the ALJ's ultimate determination that plaintiff retains the physical residual functional capacity for light exertion.[2] (*Compare* Tr. 259 ("Based on examination today it is my opinion that this claimant would have no difficulty performing work related physical activities such as sitting, handling, limited walking, standing, and carrying. This statement is based on the patient's musculoskeletal examination and the tenderness of the paravertebral lumbar musculature.") *with* Tr. 322 ("AMBULATES WITH STRONG AND STEADY GAIT."); 391 ("Walks Frequently: Walks outside room at least twice a day and inside room at least once every two hours during waking hours. . . . Makes major and frequent changes in position without assistance."), 540 (same), 585 (same) & 599 (same); *see* Tr. 463 ("pt is only drug seeking continuously asking for lortab-denied"); 504 ("Asking for lortab-drug seeking"); 583 ("Patient denies pain now or in the recent past and is not taking anything routinely for pain.")) Accordingly, the undersigned declines to recommend that the Commissioner's decision be remanded on account of

---

[2]     The ALJ appropriately defined light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[.]" (Tr. 25)

the ALJ's technical failure to perform a function-by-function analysis.

**C.      Failure to Assign Weight to the Opinion of Theresa Rozum, a Licensed Clinical Social Worker.** Plaintiff contends that the ALJ erred in failing to assign any weight to the opinion of Theresa Rozum, a Licensed Clinical Social Worker, who, on a request for medical information form supplied by that State of Alabama Food Stamp Program and dated October 12, 2007, indicated that Oates was mentally and physically unable to work due to a psychotic disorder, hyperthyroidism, diabetes, thyroiditis, antisocial personality disorder, and substance abuse. (Tr. 620)

The ALJ, as previously indicated, afforded no weight to Rozum's opinion: "No weight has been given to the opinion of Ms. Rozum since, as a social worker, she is not an acceptable _medical_ source, and the weight of the evidence has been to the contrary. Additionally, Ms. Rozum provided no explanation in support of her opinion." (Tr. 26 (internal citations omitted)) In arguing that the ALJ improperly failed to accord any weight to Rozum, plaintiff focuses exclusively upon the ALJ's observation that Rozum is not an acceptable medical source. While the undersigned believes that the ALJ correctly determined that Rozum is not an acceptable medical source, 20 C.F.R. §§ 404.1513(a)(1)-(5) & 416.913(a)(1)-(5) (2008) (defining acceptable

medical sources as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists), it is clear that the ALJ also declined to assign any weight to Rozum's opinion because she provided no explanation in support of her opinion and the weight of the evidence was contrary to her conclusion. Because these observations are correct (*compare* Tr. 620 *with* Tr. 298-467 & 503-601), the ALJ's failure to assign any weight to Rozum's opinion was not erroneous. *Cf. Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.") (internal citation omitted)). In other words, Rozum's opinion was both conclusory and inconsistent with the remaining evidence of record; therefore, the ALJ did not err in failing to accord that opinion any weight.

      **D.**    **Global Assessment of Functioning (GAF) Scores**. Plaintiff's principal argument in this case is that the ALJ erred in failing to discuss or assign any weight to the opinions of treating psychiatrist, Dr. Magdy Ragheb, regarding plaintiff's mental limitations since Ragheb's opinions regarding

plaintiff's GAF scores are well supported and not inconsistent with other substantial evidence in the record. The undersigned disagrees with plaintiff's GAF argument.

The ALJ in this case did, in fact, discuss plaintiff's GAF scores, making note of Dr. Ragheb's various ratings (Tr. 22-24) and also noting the following: "It is observed that the claimant has had a wide range of GAF scores, some of which were indicative of serious symptoms[]; however, the Administrative Law Judge notes that the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listing.' . . . Therefore, the underlying findings of the medical and non-medical evidence are found to be more relevant in determining the claimant's residual functional capacity than a GAF score, which lacks reliability in disability determinations." (Tr. 29) Therefore, it is clear that the ALJ meant to indicate that little weight was being afforded the GAF ratings of Dr. Ragheb. (*See id.*) This implicit determination by the ALJ was not erroneous based on the weight of the case law and the weight of the evidence in this case which indicates that plaintiff's mental impairments are not of disabling severity and do not prevent plaintiff from engaging in simple and

repetitive unskilled light work activities.

Even leaving aside for a moment the principle that disability is a legal decision, not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for determining ability to engage in substantial gainful employment. One reason is that "occupational functioning" is but one of three fields consider[ed] in assessing the GAF. Another problem with using it as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area.[3] Finally, it must be noted that a particular GAF range is considered appropriate for several alternative reasons; some of the factors that might result in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfere[] with the ability to work (for example, conflicts with co-workers).

The United States Court of Appeals has rejected suggestions that an ALJ commits error by declining to view a GAF score as establishing disability. Pointing out that it had "affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower," the Sixth Circuit recently cautioned that the GAF may have little or no bearing on the claimant's social and occupational functioning.

Consequently, while the GAF may represent a single piece of information to be considered in a disability inquiry, it cannot

---

[3]     These types of problems are borne out in this case, plaintiff receiving his lowest GAF score (25) on April 26, 2006, a day when a treating psychiatrist expressed serious concerns that plaintiff was malingering. (Tr. 428 ("Subjective report of psychotic symptoms and S/HI with no prior psychiatric history and no objective findings. His psychotic symptoms may be due to cocaine use or pt may have a secondary gain in mind."))

> substitute for specific information about particular capabilities and characteristics.

*Sohm v. Astrue*, 2008 WL 2437541, *2 (W.D. Ky. 2008) (internal citation omitted; footnote added); *see DeBoard v. Commissioner of Social Security*, 211 Fed.Appx. 411, 415 (6th Cir. 2006) ("'The [Global Assessment Functioning] score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning."' . . . We have previously held that the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination. . . . Moreover, the Commissioner 'has declined to endorse the [Global Assessment Functioning] score for "use in the Social Security and [Supplemental Security Income] disability programs," and has indicated that [Global Assessment Functioning] scores have no "direct correlation to the severity requirements of the mental disorders listings."' . . . Accordingly, we have affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower."); *Wind v. Barnhart*, 133 Fed.Appx. 684, 692 n.5 (11th Cir. 2005) ("[T]he Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorder listings.'"). Based upon the

18

foregoing legal analysis, along with the fact that at no time did any of plaintiff's treating psychiatrists ever opine that Oates was disabled (or severely limited) from a psychiatric standpoint, the undersigned recommends that the Court find that the ALJ in this case did not err in finding more relevant the findings of the medical and non-medical evidence of record in determining the claimant's residual functional capacity, rather than GAF scores, particularly since substantial evidence of record establishes that plaintiff is not incapable of work because of mental limitations. (*See, e.g.,* Tr. 323 ("Psychotic Disorder NOS: Most likely malingering b/c of pt's wish to receive benefits. Alternatively it could be somehow related to his hyperthyroidism. It is not affecting pt's behavior at this time."); 350-351 ("Pt asked to see me and told me he was not feeling comfortable with me and would like to have another physician. I explained to him that I was not aware of any VA policy that gives guidance how to deal with this problem. He said he did not want to go to the Harbor House where he would have to work. He added that he was not able to work b/c of his back and that his objective was to get disability benefits. He also added that he was not totally homeless and could return to his mother's home. In terms of mental health issues he stated that nothing had changed and the voices continued to bother him like before. . . . Psychotic Disorder

NOS/Antisocial Personality Disorder: It is quite clear that pt is expecting a significant secondary gain from reporting AHs and violent thoughts. Continue with Abilify 15 mg qd."); 362 ("Psychotic Disorder NOS: I have a strong suspicion that pt is malingering AHs; however I am unable to prove that and pt keeps insisting he wants something to get that voice out of his head; therefore I proposed to him to start Abilify for AHs."); 370 ("Psychosis: If not faked is most likely cocaine induced."); 412 ("He denies any suicidal or homicidal ideation. He is not a danger to himself or others."); 414 ("Cocaine induced psychosis r/o malingering."); 417 ("We discuss the situation and he explains why his drinking and use of cocaine is not at all [a part] of his problems and how his 'Mental Condition' is the real problem. He explains that for the past 12 months or so he has had auditory hallucinations. He believes this to be the source of much of his problems, and is un-accepting of the discussion that the drinking and cocaine use can be a factor. The Discharge Summary last week from the Biloxi VAMC Psychiatric Unit suggests that the drinking and the cocaine is the source of any psychiatric symptoms. No psychiatric medicines are prescribed at this time. When I asked how we can help, he reported that he wanted the 'government to get me some money'. He adds that his pain in his back following the car wreck in 2003 prohibits him

from securing work or employment. He adds that he is appealing a decision from the social security administration for disability payments."); 428 ("Subjective report of psychotic symptoms and S/HI with no prior psychiatric history and no objective findings. His psychotic symptoms may be due to cocaine use or pt may have a secondary gain in mind."); 456 ("He is asked about the substance abuse and he quickly adds that the substance abuse is not at all the problem. He says the actual problem is the Social Security Administration and the SSA not approving for him to have a disability. He says the problem is his inability to work and not getting disability."); 457 ("He denies the need for substance abuse counseling intervention, again reporting that the substance abuse is not an issue and that the only issue is the disability and the Social Security."); 508 ("Pt returns with the same clinical picture he displayed last time. He reports AHs that are not associated with any objective signs. In addition he has told the MOPC psychiatrist two weeks prior to admission that he had no problems. Most likely he is malingering hallucinations in order to have access to the IP unit. He is also minimizing his substance abuse problem and is willing to accept referral to a rehab most likely only to get a place to stay for a while. Main motivation for this admission seems to be his mother's request to contribute to the expenses of the

household. He has reported he is seeking disability benefits during the previous admission."); 511 ("Pt's AHs show no emotional or behavioral participation; they are most likely due to malingering with the inten[t] to obtain VA and other benefits; alternatively they could be cocaine induced."); 542 ("He freely admits to the last time he used alcohol and drugs was on 20 Aug 07. He mentioned he has a SSDI Court date for next week and wanted this therapist to help him out. I informed the veteran he has to come in to see me in order to be helped with his addictions."); 544 ("Veteran stated he has tried to get his SSDI and it appears the down-side to his case is drug abuse. He stated he was instructed to attend a treatment program in order to receive his benefits."); 550 ("Reported Audi. Hallucinations R/O Malingering"); 556 (plaintiff presented no management, or other, problems); 571 ("He thinks that he cannot work."); 576 ("The last time he worked was in 2003 at the frozen food. He is not on disability. He says that he wants to know how to get the disability."))

## **CONCLUSION**

The Magistrate Judge recommends that the Commissioner's decision

denying plaintiff benefits be affirmed.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 6th day of April, 2009.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

 s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE